Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
esther@rodriguezlaw.com

Travis J. Grefenstette*
Texas State Bar No. 24120866
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
tgrefenstette@mybackwages.com

**Admitted via pro hac vice.*

*Attorneys for McNicol and the Hourly Employees*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| ANDREW MCNICOL, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SMALL MINE DEVELOPMENT, LLC,<br><br>Defendant. | **Case No. 3:25-CV-00372-MMD-CSD**<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);<br><br>(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016);<br><br>(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>(4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and<br><br>(5) Failure to Timely Pay All Wages Due and Owing Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.020-050). |

# FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Andrew McNicol (McNicol) brings this class and collective action to recover unpaid wages and other damages from Small Mine Development, LLC (Small Mine) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2. Small Mine employed McNicol as one of its Hourly Employees (defined below) in Nevada.

3. Small Mine pays McNicol and the other Hourly Employees by the hour.

4. McNicol and the other Hourly Employees regularly work more than 40 hours a workweek.

5. However, Small Mine does not pay McNicol and the other Hourly Employees for all their hours worked, including overtime hours.

6. Rather, Small Mine requires McNicol and the other Hourly Employees to suit out in protective clothing and safety gear fundamentally necessary to perform their job duties, gather tools and equipment fundamentally necessary to performing their job duties, and meet with employees coming off shift to receive a briefing on the upcoming day's work "off the clock," prior to their shifts.

7. Likewise, Small Mine requires McNicol and the other Hourly Employees to change out of and store their required safety gear and protective clothing, store their fundamentally necessary tools and equipment, and wash up, "off the clock," following their shifts. (¶¶ 6 and 7 collectively Small Mine's "pre/post shift off the clock policy").

8. Small Mine's pre/post shift off the clock policy violates the FLSA and Nevada law by depriving Small Mine and the other Hourly Employees of wages, including overtime wages, for all hours worked.

9. Likewise, Small Mine's pre/post shift off the clock policy violates Nevada Law by depriving McNicol and the other Hourly Employees of timely payment of earned wages for all hours worked upon termination of their employment.

10. And Small Mine pays McNicol and the other Hourly Employees non-discretionary bonuses, calculated in part based on their hours worked, that it fails to include in their regular rates of pay for overtime purposes (Small Mine's "bonus pay scheme").

11. Thus, Small Mine fails to pay McNicol and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek, in violation of the FLSA and Nevada law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Small Mine based on its substantial contacts with and business done in Nevada, including registering to do business in Nevada and employing McNicol and other Hourly Employees in Nevada.

15. Venue is proper because in a substantial part of the events or omissions giving rise to the claim occurred in Nevada, which is in this District. 28 U.S.C. § 1391(b)(2).

16. Specifically, Small Mine employed McNicol and other Hourly Employees in Nevada pursuant to its pre/post shift off the clock policy and/or bonus pay scheme.

## PARTIES

17. Small Mine employed McNicol in Elko County and Humboldt County, Nevada from approximately January 2019 until August 2023.

18. Throughout his employment, Small Mine classified McNicol as non-exempt and paid him by the hour.

19. Throughout his employment, Small Mine subjected McNicol to its pre/post shift off the clock policy and bonus pay scheme.

20. McNicol's written consent is attached as **Exhibit 1**.

21. McNicol brings this class and collective action on behalf of himself and other similarly situated Small Mine employees who were also subject to Small Mine's pre/post shift off the clock policy and/or bonus pay scheme.

22. The FLSA collective of similarly situated employees is defined as:

> **All hourly Small Mine employees in Nevada during the past three years through final resolution of this action ("FLSA Collective Members").**

23. McNicol also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23:

24. The Nevada Class of similarly situated employees is defined as:

> **All hourly Small Mine employees in Nevada beginning July 21, 2021[1] through final resolution of this action ("Nevada Class Members").**

25. The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

26. Small Mine is an Idaho limited liability company.

27. Small Mine may be served through its counsel who have already made an appearance in this case.

**FLSA COVERAGE**

28. At all relevant times, Small Mine has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

29. At all relevant times, Small Mine has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

30. At all relevant times, Small Mine has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or

[1] This date is four years preceding the filing of the Original Complaint in this action on July 21, 2025.

otherwise working on goods or materials—such as personal protective equipment, tools, drills, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

31. At all relevant times, Small Mine has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

32. At all relevant times, McNicol and the other Hourly Employees have been Small Mine's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

33. At all relevant times, McNicol and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

## FACTS

34. Small Mine is staffing company that offers "[b]eginning to end mining services . . . [and] can do virtually every facet of [clients'] underground mining project – exploration platforms, drilling, planning, development, extraction, and closure at the end of production."[2]

35. To meet its business objectives, Small Mine hires workers, like McNicol and the other Hourly Employees.

36. While exact job titles and duties may differ, McNicol and the other Hourly Employees are all subject to Small Mine's same or similar illegal policies—its pre/post shift off the clock policy and bonus pay scheme—while performing the same or similar work.

37. For example, McNicol worked for Small as an Underground Miner in client's Mines in Elko County and Humboldt County, Nevada from approximately January 2019 through August 2023.

38. As an Underground Miner, McNicol's job duties included driving a haul truck, operating a variety of underground mining equipment, advancing and removing mining utilities, pouring concrete, and stocking and cleaning storage facilities, in accordance with Small Mine's policies, procedures, and expectations.

---

[2] https://undergroundmining.com/services/index.html (last visited June 18, 2025).

39. McNicol's job duties likewise included donning and doffing safety gear and protective clothing, gathering and storing tools and equipment, and washing up "off the clock," before and after his scheduled shifts.

40. Small Mine paid McNicol by the hour.

41. Small Mine paid McNicol approximately $22.50 an hour.

42. Throughout his employment, McNicol has worked approximately 3 to 4 days a week for 12 hours a day "on the clock" (36 to 48 hours a workweek).

43. For example, McNicol worked approximately 48 hours during the workweek immediately preceding Christmas 2022.

44. Likewise, the other Hourly Employees generally work approximately 3 to 4 days a week for 12 hours a day "on the clock" (36 to 48 hours a workweek).

45. Small Mine recorded McNicol and the other Hourly Employees as working 12 hours a workday regardless of how many hours they actually worked.

46. But throughout their employment, Small Mine has not paid McNicol and the other Hourly Employees for all their compensable hours worked.

47. Instead, Small Mine subjects McNicol and the other Hourly Employees to its pre/post shift off the clock policy.

48. For example, Small Mine required McNicol to dress out in his protective clothing and safety gear (including hard hat, head lamp, mining belt, metatarsal boots, ear protection, safety glasses, reflective clothing, gloves, tracker, self-contained self-rescuer [SCSR]), gather tools and equipment fundamentally necessary to performing his underground mining duties (including hand tools), and meet with employees coming off shift regarding the day's work, prior to his shift, "off the clock," on Small Mine's (or its clients') premises, and without compensation.

49. Donning his protective clothing and safety gear, gathering necessary tools and equipment, and meeting with employees coming off shift took McNicol approximately an hour each workday.

50. McNicol could not perform his job duties in accordance with Small Mine's policies, procedures, and expectations without this protective clothing, safety gear, other tools and equipment, and meeting with employees coming off shift because these job duties are fundamentally intertwined with his other mining job duties.

51. McNicol could not safely perform his job duties in accordance with Small Mine's policies, procedures, and expectations without this protective clothing, safety gear, other tools and equipment, and meeting with employees coming off shift.

52. Indeed, much of the safety gear McNicol utilized is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

53. The donning of protective clothing and safety gear, gathering of other fundamentally essential tools and equipment, and meeting with employees coming off shift for briefing on the day's work were therefore integral and indispensable work duties for McNicol.

54. Likewise, Small Mine required McNicol to remove and store his safety gear and protective clothing, store his tools and equipment, and wash up after his shifts "off the clock" and without compensation.

55. This took McNicol approximately an hour each workday.

56. McNicol could not perform his job duties in accordance with Small Mine's policies, procedures, and expectations without removing and storing his safety gear and protective clothing, storing tools and equipment, and showering each workday.

57. McNicol could not safely perform his job duties in accordance with Small Mine's policies, procedures, and expectations without removing and storing his safety gear and protective clothing, storing tools and equipment, and showering, each workday.

58. The removal of his safety gear and protective clothing, storing tools and equipment, and showering were therefore integral and indispensable work duties for McNicol.

59. But under its pre/post shift off the clock policy, Small Mine did not compensate McNicol for the same.

60. Thus, because of its pre/post shift off the clock policy, Small Mine failed to pay McNicol wages for all hours worked, including overtime wages for all his overtime hours worked, in violation of the FLSA and Nevada Law.

61. McNicol and the other Hourly Employees perform their jobs under Small Mine's supervision and use materials, equipment, and technology Small Mine approves and supplies.

62. Small Mine requires McNicol and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

63. At the end of each pay period, McNicol and the other Hourly Employees receive wages from Small Mine that are determined by common systems and methods that Small Mine selects and controls.

64. But, just as with McNicol, Small Mine fails to pay the other Hourly Employees for all compensable hours worked.

65. Indeed, Small Mine subjects the other Hourly Employees to its pre/post shift off the clock policy that it imposed on McNicol.

66. Specifically, like McNicol, Small Mine requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, mining belt, metatarsal boots, ear protection, safety glasses, reflective clothing, head lamp, gloves, tracker, SCSR), gather tools and equipment (including hand tools), and meet with employees coming off shift prior to their scheduled shifts, "off the clock," on Small Mine's (or its clients') premises, and without compensation.

67. As with McNicol, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

68. And Small Mine requires the other Hourly Employees to remove their safety gear and protective clothing, store their tools and equipment, and shower, after their shifts, "off the clock" and without compensation.

69. But, like McNicol, the other Hourly Employees are forced to perform this compensable work "off the clock" before and after their scheduled shifts.

70. And, just as with McNicol, Small Mine does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts, despite these job duties being fundamentally intertwined with their other mining job duties.

71. And like McNicol, these job duties take the other Hourly Employees approximately 2 hours each workday.

72. Small Mine fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" that Small Mine does not want performed.

73. And Small Mine knows, should know, or recklessly disregards whether McNicol and the other Hourly Employees routinely perform work "off the clock," without compensation, before and after their scheduled shifts.

74. Thus, Small Mine requires, requests, suffers, or permits McNicol and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

75. Despite accepting the benefits, Small Mine does not pay McNicol and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

76. Thus, under Small Mine's pre/post shift off the clock policy, McNicol and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of the FLSA and Nevada law.

77. Further, throughout their employment, Small Mine paid McNicol and the other Hourly Employees according to its bonus pay scheme.

78. Specifically, Small Mine agreed to pay, and indeed, subsequently paid McNicol and the other Hourly Employees non-discretionary bonuses, calculated at least in part based on hours worked, including safety bonuses and production bonuses, that it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

79. Small Mine knew these bonuses are required to be, but were not, included in McNicol's and the other Hourly Employees' regular rates of pay for overtime purposes.

80. As a result, Small Mine failed to pay McNicol and the other Hourly Employees overtime at a rate of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked over 40 a workweek, in violation of the FLSA and Nevada law.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

81. McNicol brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to Fed. R. Civ. P. 23.

82. Like McNicol, the other Hourly Employees are victimized by Small Mine's pre/post shift off the clock policy and/or bonus pay scheme.

83. Other Hourly Employees worked with McNicol and indicated they were paid in the same manner, performed similar work, and were subject to Small Mine's same pre/post shift off the clock policy and bonus pay scheme.

84. Based on his experiences with Small Mine, McNicol is aware Small Mine's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

85. The Hourly Employees are similarly situated in the most relevant respects.

86. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages for all overtime hours worked.

87. Rather, the Hourly Employees are held together by Small Mine's pre/post shift off the clock policy and bonus pay scheme, which systematically deprive McNicol and the other Hourly Employees of required wages, including overtime wages, for all hours worked.

88. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

89. Small Mine's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

90. Small Mine's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

91. Small Mine's records likewise show it paid the Hourly Employees non-discretionary bonuses based at least in part on the number of hours they work.

92. Thus, the back wages owed to McNicol and the other Hourly Employees can be calculated using the same formula applied to the same records.

93. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Small Mine's records, and there is no detraction from the common nucleus of liability facts.

94. Therefore, the issue of damages does not preclude class or collective treatment.

95. McNicol's experiences are therefore typical of the experiences of the other Hourly Employees.

96. McNicol has no interest contrary to or in conflict with the other Hourly Employees that would prevent class or collective treatment.

97. Like each Hourly Employee, McNicol has an interest in obtaining the unpaid wages owed under federal and Nevada law.

98. McNicol and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

99. McNicol retained counsel with significant experience in complex class and collective action litigation.

100. A class and collective action is superior to other available means for fair and efficient adjudication of this action.

101. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Small Mine will reap the unjust benefits of violating the FLSA and Nevada law.

102. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

103. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Small Mine.

104. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

105. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

106. Among the common questions of law and fact are:

a. Whether Small Mine's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked, including overtime hours;

b. Whether Small Mine's bonus pay scheme deprived the Hourly Employees of overtime at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

c. Whether Small Mine's pre/post shift off the clock policy and/or bonus pay scheme deprived the Hourly Employees of earned wages upon termination of employment;

d. Whether Small Mine's decision not to pay the Hourly Employees all "straight time" and overtime wages due was made in good faith; and

e. Whether Small Mine's violations were willful.

107. Small Mine's pre/post shift off the clock policy and bonus pay scheme deprived McNicol and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

108. There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

109. The Hourly Employees are known to Small Mine and can be readily identified and located through Small Mine's business and personnel records.

## SMALL MINE'S VIOLATIONS WERE WILLFUL

110. Small Mine knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

111. Small Mine knew it was required to pay employees for all compensable hours worked.

112. Small Mine knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

113. Small Mine knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

114. Small Mine knew it paid its Hourly Employees according to its pre/post shift off the clock policy and bonus pay scheme.

115. Small Mine knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" and without pay.

116. Small Mine knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather tools and equipment, and attend meetings "off the clock."

117. Small Mine knew it controlled the Hourly Employees' work procedures.

118. Small Mine knew its Hourly Employees' mandatory "off the clock" work was a fundamental and necessary requirement of their jobs.

119. Small Mine knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

120. Small Mine knew its Hourly Employees routinely performed this daily, required "off the clock" work for Small Mine's benefit.

121. In other words, Small Mine knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering tools, attending meetings) "off the clock" and without compensation.

122. Small Mine knew its pre/post shift off the clock policy and bonus pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours.

123. Small Mine knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

124. Small Mine knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy and bonus pay scheme that systematically deprived the Hourly Employees of "straight time" wages, earned wages, and overtime for their hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
## (FLSA COLLECTIVE)

125. McNicol brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

126. Small Mine violated, and is violating, the FLSA by employing non-exempt employees, McNicol and the other FLSA Collective Members, in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

127. Small Mine's unlawful conduct harmed McNicol and the other FLSA Collective Members by depriving them of overtime wages they are owed.

128. Accordingly, Small Mine owes McNicol and the other FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

129. Because Small Mine knew, or showed reckless disregard for whether, its pre/post shift off the clock policy and bonus pay scheme violated the FLSA, Small Mine owes McNicol and the other FLSA Collective Members these wages for at least the past 3 years.

130. Small Mine is also liable to McNicol and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

131. Finally, McNicol and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

**COUNT II**
**FAILURE TO PAY FOR ALL HOURS WORKED**
**(NEVADA CLASS)**

132. McNicol brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to FED. R. CIV. P. 23.

133. McNicol has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

134. At all relevant times, Small Mine was subject to Nevada law because Small Mine was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

135. At all relevant times, Small Mine employed McNicol and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

136. NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

137. Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

138. Small Mine failed to compensate McNicol and the other Nevada Class Members for all hours worked, as described in this Complaint.

139. Accordingly, McNicol "bring[s] a civil action to recover the difference between the amount paid to [McNicol and the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

140. As noted, Small Mine did not compensate McNicol and the other Nevada Class Members for work before and after their shifts, performed under Small Mine's direction and control.

141. Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

142. McNicol and the other Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Small Mine's company-wide policies and practices.

143. As a direct and proximate result, McNicol and the other Nevada Class Members have suffered, and continue to suffer, substantial damages.

144. Small Mine regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to McNicol and the Nevada Class Members.

145. Through this unlawful course of conduct, Small Mine has deprived and continues to deprive McNicol and the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

146. Small Mine's actions were (and are) willfully oppressive, fraudulent, and malicious, entitling McNicol and the Nevada Class Members to punitive damages.

147. Small Mine's violations were intentional.

148. In accordance with NRS 608.140, demand has been made to Small Mine for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

149. Accordingly, McNicol and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked,

punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

**COUNT III**
**FAILURE TO PAY MINIMUM WAGES**
**(NEVADA CLASS)**

150. McNicol brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

151. McNicol has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

152. At all relevant times, Small Mine was subject to Nevada law because Small Mine was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

153. At all relevant times, Small Mine employed McNicol and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

154. Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

155. Accordingly, McNicol and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

**COUNT IV**
**FAILURE TO PAY OVERTIME WAGES**
**(NEVADA CLASS)**

156. McNicol brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

157. McNicol has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

158. At all relevant times, Small Mine was subject to Nevada law because Small Mine was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

159. At all relevant times, Small Mine employed McNicol and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

160. Nevada law requires that employers, such as Small Mine, pay employees, such as McNicol and the Nevada Class Members at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. Nev. Rev. Stat. § 608.018(2).

161. McNicol and the Nevada Class Members have been deprived of their overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 in a workweek as a direct and proximate result of Small Mine's pre/post shift off the clock policy and bonus pay scheme.

162. Small Mine regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to McNicol and the Nevada Class Members.

163. Through this unlawful course of conduct, Small Mine has deprived and continues to deprive McNicol and the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

164. Small Mine's actions were willfully oppressive, fraudulent and malicious, entitling McNicol and the Nevada Class Members to punitive damages.

165. Small Mine's violations were intentional.

166. In accordance with NRS 608.140, demand has been made to Small Mine for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

167. Accordingly, McNicol and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

**COUNT V**
**FAILURE TO PAY ALL WAGES UPON TERMINATION**
**(NEVADA CLASS)**

168. McNicol brings his failure to timely pay wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

169. McNicol has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

170. At all relevant times, Small Mine was subject to Nevada law because Small Mine was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

171. At all relevant times, Small Mine employed McNicol and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

172. When an employer, such as Small Mine, terminates an employee, such as McNicol or the Nevada Class Members, their wages and compensation earned but unpaid at the moment of discharge immediately become due and payable and become due and payable to a quitting or resigning employee within 7 days or the next regular payday. Nev. Rev. Stat. §§ 608.020 and 608.030.

173. Employers that do not pay discharged employees all earned wage "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" and pay all quitting or resigning employees "on the day the wages or compensation is due" are subject to a penalty equivalent to "the wages or compensation of the employee at the same rate from the day the employee resigned, quit or was discharged or placed on nonworking status until paid or for 30 days, whichever is less." Nev. Rev. Stat. 608.040(1)(a-b).

174. NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." Nev. Rev. Stat. § 608.050.

175. By failing to pay McNicol and the Nevada Class Members for all hours worked (including minimum wages, regular wages, and/or overtime wages owed) at the required rates based on all remuneration, in violation of Nevada law, Small Mine has failed to timely pay all wages due and owing to McNicol and the Nevada Class Members who have separated their employment.

176. Small Mine's violations were intentional.

177. In accordance with NRS 608.140, demand has been made to Small Mine for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

178. McNicol and the Nevada Class Members who are no longer employed by Small Mine, are entitled to recover an additional 30 days' wages under NRS 608.050, plus costs, interest, and attorneys' fees, as provided by Nevada law, and all other appropriate relief under Nevada law including, but not limited to all available damages and penalties.

## JURY DEMAND

179. McNicol demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, McNicol, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing McNicol and his counsel to represent the interests of the Hourly Employees;

d. An Order finding Small Mine liable to McNicol and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

e. An Order finding Small Mine liable to McNicol and the Hourly Employees for all unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f. A Judgment against Small Mine awarding McNicol and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: September 8, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Travis J. Grefenstette*
Travis J. Grefenstette*
Texas State Bar No. 24120866
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
tgrefenstette@mybackwages.com

Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
esther@rodriguezlaw.com

**Admitted pro hac vice.*

**ATTORNEYS FOR MCNICOL & THE HOURLY EMPLOYEES**

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system and that all counsel who have made appearances in this case will receive service through the CM/ECF.

*/s/ Travis J. Grefenstette*
Travis J. Grefenstette